## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

GARRETT SCHULER, ROBERT MAURER,
MATTHEW GROH, and CAMERON BONNEY,
individually, and on behalf of all others
similarly situated,

                    Plaintiffs,           Case No.

-vs-

B & L SYSTEMS, LLC, d/b/a          **PLAINTIFF'S DEMAND**
Fifth Wheel Freight, REESE            **TRIAL BY JURY**
VAN HECK and JOSH BROWLEY,

                  Defendants.

---

## COLLECTIVE AND CLASS ACTION COMPLAINT

---

Plaintiffs, GARRETT SCHULER ("Schuler"), ROBERT MAURER ("Maurer"),  MATTHEW GROH ("Groh"), and CAMERON BONNEY ("Bonney") (sometimes collectively "Plaintiffs"), individually, and on behalf of all other similarly situated employees, through their counsel, bring this Collective and Class action pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (the "FLSA") and FRCP 23; as well as for related retaliation against Schuler in violation of §215(a)(3) of the FLSA, and supplemental claims under Michigan law, *i.e.,* the Michigan Improved Workforce Opportunity Wage Act ("MIWOWA"), Michigan Compiled Laws, § 408.934, *et seq.*, and the Bullard-Plawecki Employee Right to Know Act 397 of 1978, Michigan Compiled Laws, 423.501, *et seq.* (the "Privacy Act"), against defendants, B & L SYSTEMS, LLC, d/b/a FIFTH WHEEL FREIGHT (the "Company"), REESE VAN HECK ("Heck") and JOSH BROWLEY ("Browley") (collectively "Defendants").

Plaintiffs allege, upon their personal belief, as to themselves, their own acts, and for all other matters, upon information and belief, and based upon the investigation made by them and their counsel, as follows:

## NATURE OF THE ACTION

1.     Plaintiffs are each former employees of the Company and bring this action to rectify defendants' violation of the FLSA by knowingly requiring and permitting them, and the putative class members,  to work in excess of 40 hours per week without properly compensating them at an overtime rate for those additional hours, and by knowingly requiring, encouraging and/or permitting plaintiffs to, and/or demanding that, plaintiffs (as defined below) to work and be "on-call" twenty-four (24) hours a day, seven (7) days a week, 365 days a year, to perform the duties and responsibilities of their employment with the Company.

2.     Plaintiffs also seek to redress defendants' violation of the MIWOWA by knowingly and intentionally failing to pay them, and putative class members, full and proper wages accruing and owed on their regular paydays, and for damages under the Privacy Act.

3.     Plaintiffs worked for defendants as salaried Associate Logistic Consultants, Logistic Consultants and Sales Consultants, and/or in other similar positions, regardless of their precise titles, as well as other salaried employees, with whom plaintiffs worked (hereafter sometimes collectively "the Class").

4.     Pursuant to 29 U.S.C. §§ 216(b) and 256, plaintiffs' consent to become representative plaintiffs in this action. When other individuals similarly situated join this action as named plaintiffs, their consents will be filed with the Court. These written consent forms will set forth each plaintiff's name and intent to be party to this lawsuit.

## JURISDICTION AND VENUE

5.     This Court has subject-matter jurisdiction over this action pursuant to 29 U.S.C. § 216(b), which provides that suits under the FLSA "may be maintained against any employer... in any Federal or State Court of competent jurisdiction," and pursuant to 28 U.S.C.§ 1331 because such

claims arise under the FLSA, and the Company is organized and existing under the laws of the State of Michigan and maintains its principal place of business in this District.

6.      This Court has supplemental jurisdiction over plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

7.      Venue is proper in this judicial District pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3), because defendants reside and conduct business within this District.

## PARTIES

8.      At all relevant times, Schuler was an adult, Michigan resident, residing at 959 Wealthy Street, S.W., Unit 21, Grand Rapids, Michigan 49506, and who worked for defendants as an Associate Logistic Consultant; a Logistic Consultant; and later as a Sales Consultant, in its Kentwood, Michigan facility - during the period from on or about March 2, 2020, until on or about February 12, 2024.

9.      At all relevant times, however, Schuler was misclassified as an "exempt" employee and compensated at various annual salaries between $40,000.00 and $75,000.00, plus a 3 percent – 4 percent commission on paid in business that he generated.

10.     At all relevant times, Maurer was an adult, Michigan resident, residing at 2165 Philo Street, Muskegon, Michigan 49441, and worked for defendants as a Logistic Consultant in its Kentwood, Michigan facility during the period from on or about April 17, 2022, through on or about February 1, 2024  - initially as a Logistics Consultant earning a $40,000.00 annual salary for the first three (3) months with no commissions, and then received an annual salary of $50,000.00, plus a 3 percent commission on paid in business that he generated.

11.     Thereafter, Maurer was promoted to a Senior Logistics Consultant and paid an annual salary of $60,000.00 (plus a 3 percent commission on all new and current business).  During his last five (5) months of employment, *i.e.,* from or about October of 2023 – February of 2024, Maurer

3

transitioned to a sales executive role where his primary duties included "cold calling for new customers, as well as after-hours operations such as checking on loads and truck driver issues.

12.    All relevant times, however, Maurer was misclassified as an "exempt" employee.

13.    At all relevant times, Groh was an adult, Michigan resident, residing at 6075 8th Avenue, Unit 20, Grandville, Michigan 49418, and worked for defendants as a Freight Broker in Dedicated Operations at its Kentwood, Michigan facility during the period from on or about August 9, 2021, until on or about January 27, 2023, at which time he resigned.

14.    At all relevant times, however, Groh was misclassified as an "exempt" employee and compensated at various annual salaries between $40,000.00 and $60,000.00, plus monthly commissions based on unexplained and unverified factors.

15.    At all relevant times, Bonney was an adult, Michigan resident, residing at 5209 Knoll Pond Drive, Grand Rapids, Michigan 49546, and worked for defendants in its Kenwood, Michigan facility as a Carrier Procurement Representative from on or about October 19, 2020, through on or about February 26, 2021 (earning $15.00 per hour); and then as a Dedicated Operations Representative, from on or about March 1, 2021, through on or about February 24, 2023.

16.    At all relevant times, however, Bonney was misclassified as an "exempt" employee and compensated at annual salaries between $40,000.00 and $50,000.00, plus monthly commissions based on unexplained and unverified factors.

17.    The Company, B & L Systems, LLC, is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 4460 44th Street, SE, Suite D, Kentwood, Michigan 49512. The Company is one of the nation's largest logistics and transportation companies, is registered by the U.S. Department of Transportation as a carrier with license number 2362964 and is a freight broker with license number MC-806984.

18.     Heck is a Michigan citizen, residing in the Grand Rapids, Michigan area, and has been a full-time employee of the Company since 2017. Heck is currently Chief Executive Officer ("CEO") and, at all relevant times, was responsible for employee duties of plaintiffs and compensation, and is, and has been, aware of the policies and practices set forth in this *Collective and Class Action Complaint -* and has tolerated same.  Heck is an "employer" as defined under the FLSA and is a person acting directly or indirectly in the interests in the Company.

19.     Browley is a Michigan citizen, residing in the Grand Rapids, Michigan area. Browley is a full-time employee and is currently the Company's president.  At all relevant times, Browley was responsible, along with Heck, for employee duties (including plaintiffs) as well as their compensation and is and has been aware of the policies and practices set forth in this *Collective and Class Action Complaint* – and has tolerated same. Browley is an "employer" as defined under the FLSA and is a person acting directly or indirectly in the interests in the Company.

20.     Upon information and belief, Heck and Browley have financial incentives from underpaying Company employees, including plaintiffs, and have each benefitted financially from the subject FLSA and MIWOWA violations.

21.     The Company currently employs more than 200 people in various positions within the transportation industry providing third-party logistics services to its customers, and contracts with carriers to pick-up and deliver the loads that are used to transport goods throughout the nation.

22.     Over the relevant period, the Company has terminated hundreds of employees.

23.     At all relevant times, defendants employed plaintiffs and similarly situated employees in the transportation industry within the meaning of the FLSA, 29 U.S.C. § 203(d), and were actively engaged in such conduct.

24.     At all relevant times, defendants were, and are, covered by the FLSA because each defendant is an "enterprise engaged in commerce" under the FLSA, 29 U.S.C. § 203(s)(1)(A), and as

the Company's employees are engaged in commerce and revenue that, upon information and belief, exceeds $100,000,000 annually.

25.     The FLSA requires an employer to compensate an employee who works more than forty (40) hours per workweek "at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).  The FLSA exempts from this overtime pay requirement any employee who is employed "in a bona fide executive, administrative, or professional capacity[.]" 29 U.S.C. § 213(a)(1).

## SALIENT FACTS

26.     Plaintiffs bring this action on their own behalf, as well as on behalf of all similarly situated individuals who have worked for defendants, including salaried Associate Logistic Consultants, Logistics Consultants, Senior Account Managers, Carrier Sales Representatives, Operations Managers and Dedicated Operations Representatives, and who hold or have held other similar positions.

27.     These various employees also share similar job titles, training, job descriptions and job tasks, but none of them were paid time and one half (1.5 times) their hourly rate of pay for all time worked over forty (40) hours per week.

28.     Even though plaintiffs, and those similarly situated, did not meet any test for FLSA overtime exemption, defendants failed to pay them the requisite overtime rate of 1.5 times their regular rate for all hours worked more than 40 hours per week ("Overtime Hours"), despite routinely working Overtime Hours.

29.     During the hiring process - and as stated in the Company's Employee Handbook (*i.e.* "[t]he workweek is generally from Monday to Friday, with normal working hours of 8:00 A.M. to 5:00 P.M."), all employees of Fifth Wheel Freight, including plaintiffs, were (and are) promised that normal work hours are 8:00 A.M. to 5:00 P.M. However, plaintiffs were required to remain working in the

Company's offices until at least 5:30 P.M.  While plaintiffs were also promised a one-hour meal break, that was frequently not permitted by the Company.

30.     Furthermore, once plaintiffs, and similarly situated co-employees, left the Company's offices, they were required to remain "on call" and answer their personal cell phones at all hours of the day and night, weekdays and weekends, and were threatened with discipline, up to and including termination for failing to do so.

31.     By way of example only, below is a January 15, 2024 e-mail from Schuler's direct manager, Grant McDonald, to Sales Consultants sent at 5:23 P.M. *(i.e.,* "before the end of the day"). This was a regular occurrence after 5:00 P.M., and those employees who did not follow this directive were punished and/or terminated.



Grant McDonald removed Matthew Prehn from the chat.

Yesterday

**Grant McDonald**  Yesterday 5:23 PM

Quickly before the end of the day:  Thoughts on the lower margin today?

**Evan James**  Yesterday 5:24 PM

rates rising due to storms / shit weather

**Spencer Ford**  Yesterday 5:24 PM

Capacity in the midwest down, probably due to the weather. We had to overpay a bit mainly in that area today

**Dakota Kazen**  Yesterday 5:25 PM

We had really bad capacity due to weather as well

**Isaac Hernandez**  Yesterday 5:25 PM

> **Evan James**  1/15/2024, 5:24 PM
> rates rising due to storms / shit weather

Same here for us. Just weather related issues and guys willing to not run unless it was a premium rate for them to go out there

**James McQuillan**  Yesterday 5:27 PM

I concur - Weather

**Jake Bush**  Yesterday 5:27 PM

Carriers were in control on some of the lanes we had today. Had to push some freight until after the weather clears but also had to overpay to get some hot

32.     The Company also did not provide its Associate Logistics Consultants, Logistics Consultants, Carrier Sales Representatives, Operations Managers, Dedicated Operations

Representatives and other non-exempt employees with a work cell phone, but instead required employees to download an app on their *personal* cell phones (purchased and paid for by the employees) so as to track when employees missed calls from customers - and then disciplined or terminated its employees for same.

33.     Plaintiffs routinely worked overtime hours but were not paid the correct overtime compensation of time and one-half (1.5) as required by the FLSA, and typically worked *at least* 10 - 20 additional hours per week beyond the 8:00 A.M. to 5:00 P.M. time period, *as well as* being required to be "on call" for the remaining sixteen (16) hours each day, five (5) days a week, Monday through Friday, 365 days a year, from 5:00 P.M. until 8:00 A.M. the following day.

34.     The Company has two (2) shifts: (a) one from 8:00 A.M. to 5:00 P.M. (the "First Shift"); and (b) one from 9:00 P.M. until 6:00 A.M. (the "Second Shift").  As a result, its First Shift employees must handle all calls and e-mails from the time they leave the Company's office until the Second Shift starts working at 9:00 P.M.. that day.

35.     Heck and Grant McDonald were amongst the supervisors who instructed the Company's non-exempt employees, including plaintiffs, to work more than forty (40) hours a week without overtime compensation.

36.     Plaintiffs, and their similarly situated co-workers, also often worked multiple shifts each week – without lunch breaks and frequently worked more than their scheduled shifts, especially during busy periods, such as weekends or during shortages.

37.     Even though plaintiffs were required and/or encouraged to work overtime hours, defendants failed to pay them 1.5 times their regular rate of pay for all overtime hours worked, as required by the FLSA and the MIWOWA.

38.    At all relevant times, defendants knew of the above-stated violations which reduced the Company's labor and payroll costs and generated more profits than if they had  complied with the FLSA and the MIWOWA.

39.    Plaintiffs were subject to defendants' uniform policies and practices thereby depriving them of overtime compensation.  As a result of defendants' willful failure to pay plaintiffs in accordance with the FLSA and the MIWOWA, they have suffered lost wages and other related damages, as alleged below.

40.    At all times relevant, Schuler, *inter alia,* complained to the Company about its failure to properly compensate him, and other similarly situated employees, for working overtime - as required by governing wage and hour laws.  On or about November 17, 2023, Schuler also informed his superior(s) that he and other employees needed more operational help between the end of the first shift, and the beginning of the second shift (9:00 P.M.), as they were being required to work after 5:30 P.M. ***without pay***.

41.    On or about February 12, 2024, Schuler was terminated in retaliation for his complaints and expressing legally protected concerns about the Company's failure to comply with said overtime pay requirements.

42.    On or about February 21, 2024, the Company's founder and owner, Brian Bennett, upon information and belief, announced in-person to Company staff that they were not permitted to work past 5:00 P.M. at the office - as that would be illegal.

**The Company's Classification of Various Employees**

43.    At all relevant times, the Company has, *inter alia,* employed individuals with the following titles, compensation and job duties:

a. **Associate Logistics Consultants:**

$40,000.00 annual base salary.  These employees are required to make "cold calls" and prospect for new customers; do not have the ability to hire and fire; do not have the ability to make decisions; and do not manage a department or team.  When new Associate Logistics Consultants are hired, they are required to reach a $10,000.00 draw on their sales before they have an opportunity to earn commissions.  If they fail to meet that threshold during the first six (6) months of their employment with the Company, they are subject to termination.

b. **Logistics Consultants:**

$40,000.00 annual base salary and a commission. These employees are required to make "cold calls" and prospect for new customers; do not have the ability to hire and fire; do not have the ability to make decisions; and do not manage a department or team

c. **Senior Account Managers:**

$75,000.00 annual base salary and a 3 percent to 4 percent commission. These employees do not have the ability to hire and fire; do not have the ability to make decisions; and do not primarily manage a department or team.

d. **Carrier Sales Representatives:**

$60,000.00 annual base salary and a commission. These employees are responsible for locating carriers to carry the loads for the Company's customers. These employees do not have the ability to hire and fire; do not have the ability to make decisions; and do not manage a department or team.

e. **Operations Managers:**

$60,000.00 annual base salary and a 1 percent commission.  These employees handle a "book of business," also known as a group of the Company's customers; do not have the ability to hire and fire; do not have the ability to make decisions; and do not primarily manage a department or team.

f. **Dedicated Operations Representatives:**

$60,000.00 annual base salary and a discretionary bonus. These employees handle a "book of business," also known as a group of the Company's customers; do not have the ability to hire and fire; do not have the ability to make decisions; and do not manage a department or team.

44.     None of the above classes of Company employees have authority to order a driver to stop driving, discipline a driver, or otherwise manage drivers – none of whom are Company employees, and are, instead, employed by the various trucking companies who are customers of the Company.

45.     Further, the Company is not in the business of dispatching truck drivers, but rather books truck drivers and secures trucking services. Dispatchers who work for the Company's customers are solely responsible for carriers and their fulfillment of the transportation at issue.

## Defendants Willfully Violated the FLSA

46.     At all times relevant, defendants had no good faith belief that plaintiffs were exempt from the overtime requirements of the FLSA or Michigan law, and either knowingly violated, or acted in reckless disregard of, applicable legal provisions by failing to pay plaintiffs overtime compensation for all overtime hours worked.  Defendants' willful acts and omissions included, but were limited to:

a.     Directing employees on the first shift, as alleged herein, that they must work in the Company's office at least until 5:30 P.M. each day without the payment of overtime;

b.     Directing employees on the first shift, as alleged herein, that they must continue to perform their job duties and responsibilities and answer all work calls on their monitored personal cell phone after leaving the Company's office at least until the second shift starts at 9:00 P.M. each work day thereby causing employees to work more than forty (40) hours each week without overtime compensation;

      c.      Requiring employees on the first shift to work more than forty (40) hours each week without overtime compensation by directing them to be available to answer all customer calls on their monitored personal cell phone twenty-four (24) hours a day, seven (7) days a week, and 365 days a year or face punishment or termination of their employment;

      d.      Failing to maintain payroll records reflecting that plaintiffs did, in fact, regularly work overtime hours without pay;

      e.      Failing to pay plaintiffs 1.5 times their regular rate of pay for all overtime hours worked;

      f.      Knowing that plaintiffs frequently and routinely worked through their daily meal breaks;

      g.      Having records and documents, including but not necessarily limited to: job offer letters, employment agreements, the Company Employee Handbook and training materials for the above-listed categories of employees reflecting that defendants were aware of the nature of the work performed by plaintiffs, records that they worked more than forty (40) hours per week and routinely performed work during their meal breaks, after 5:00 P.M. in the office of the Company and at home until the second shift took over at 9:00 P.M. daily and later in monitoring the employees' answering of their work calls to their personal cell phones twenty-four (24) hours a day, seven (7) days a week, and 365 days a year and, thereby, causing employees to work more than forty (40) hours each week without overtime compensation;

      h.      Having records and documents including, but not necessarily limited to: job offer letters, employment agreements, the Company Employee Handbook and training materials for plaintiffs reflecting that defendants knew that they were subjected to the wage requirements of the FLSA;

i.      Lacking a good-faith basis to believe that plaintiffs fell within any exemption from the overtime requirements of the FLSA; and

j.      Knowing that Heck and Browley would (and did) benefit financially by failing to pay plaintiffs overtime pay for all overtime hours worked by reducing labor and payroll costs, and other resulting benefits.

## **FLSA Collective Action Allegations**

47.     As alleged above, plaintiffs bring this collective action on behalf of themselves, and others similarly situated pursuant to 29 U.S.C. § 216(b) to recover unpaid overtime wages, liquidated damages, and other damages related to defendants' FLSA violations.

48.     Plaintiffs pursue similarly titled relief on behalf of all individuals who currently work, or have worked, for the defendants as Associate Logistics Consultants, Logistics Consultants, Carrier Sales Representatives, Operations Managers or Dedicated Operations Representatives, similarly situated salaried employees, with whom plaintiffs worked - or any other similarly-titled, salaried position at any time within the preceding three (3) years from the date of filing this Complaint.

49.     As more fully alleged below, plaintiffs are members of the Class they seek to represent because, *inter alia,* they were employed by defendants during the relevant period, were routinely required, directed, encouraged, and/or permitted to work more than forty (40) hours per week, as described above, but not paid an overtime rate for time they worked over forty (40) hours per week.

50.     Specifically, defendants engaged in common schemes to avoid paying plaintiffs all overtime pay of time and one half (1.5 times) their regular hourly rate when they worked in excess of forty (40) hours per week, even though plaintiffs did not satisfy the necessary conditions exempting them from overtime.

51.     Although certain plaintiffs have, or may have had, different job titles throughout the relevant period, this action may be properly maintained as a collective because, *inter alia:*

a.      Plaintiffs, as well as similarly situated salaried employees with whom they worked, were all paid an annual salary;

b.      Plaintiffs, as well as similarly situated salaried employees with whom they worked, were all non-exempt employees;

c.      Plaintiffs, as well as similarly situated salaried employees with whom they worked, worked in excess of forty (40) hours per week;

d.      Regardless of their job title or location, defendants did not pay plaintiffs, as well as similarly situated salaried employees with whom they worked, an overtime premium of 1.5 times their regular hourly rate (weekly salary divided by forty (40) hours) for all time worked in excess of forty (40) hours per week;

e.      Plaintiffs, as well as similarly situated salaried employees with whom they worked, were routinely required, directed, encouraged, and/or permitted to work through their unpaid meal break; and

f.      Defendants maintained common timekeeping and payroll systems and policies with respect to plaintiffs, other similarly situated employees with whom they worked.

52.      Defendants required, directed, encouraged, and permitted plaintiffs, as well as similarly situated non-exempt, salaried employees with whom they worked, to work more than forty (40) hours per week without proper overtime compensation.

53.      Defendants' conduct as alleged herein was willful and has caused damage to plaintiffs.

54.      Defendants are liable under the FLSA for failing to properly compensate plaintiffs and the proposed collective class. Plaintiffs request that the Court authorize notice to the members of the collective class to inform them of the pendency of this action and their right to "opt-in" to this lawsuit pursuant to 29 U.S.C. § 216(b) for the purpose of seeking unpaid overtime compensation, liquidated damages under FLSA, and the other relief requested herein.

55.     Plaintiffs estimate that the collective class, including both current and former employees over the relevant period, will include between 500 - 1000 or more members. The precise number of collective Class Members should be readily available from defendants' personnel, scheduling, time and payroll records, and from input received from the Class Members as part of the notice and "opt-in" process provided by 29 U.S.C. § 216(b).  Given the composition and size of the collective class, its members may be informed of the pendency of this action directly via U.S. mail and e-mail.

**Class Action Allegations**

56.     Pursuant to FRCP 23, plaintiffs bring these claims on their own behalf, and as representatives of all other similarly situated individuals, pursuant to the FLSA and MIWOWA to recover unpaid wages, unpaid overtime compensation, unlawfully withheld wages, statutory penalties, prejudgment interest, attorneys' fees and costs, and other recoverable damages, as well as under the Privacy Act.

57.     Both the FLSA and MIWOWA require employers to pay employees 1.5 times their regular rate of pay for all hours worked over forth (40) per week. The MIWOWA provides that employers who violate the provisions of the Act are liable to affected employees for unpaid wages, costs, attorneys' fees, a civil penalty of $1,000.00 per occurrence, and other appropriate relief.

58.     Plaintiffs seek class certification under FRCP Rule 23 for the following class(es) of similarly situated employees under the FLSA, MIWOWA and the Privacy Act:  All individuals who currently work or have worked for the defendants as salaried Associate Logistic Consultants, Logistic Consultants, Senior Account Managers, Carrier Sales Representatives, Operations Managers and Dedicated Operations Representatives at any time during the three (3) years prior to the date of the commencement of this action, through the date of judgment in this action, and who were not properly paid for time worked in excess of forty (40) hours in given workweeks (the "Class").

59.     This action is properly maintainable as a class action under FRCP 23(a)–(b) because, *inter alia*:

a.     The Class is so numerous that joinder of all members is impracticable;

b.     There are questions of law or fact that are common to the Class;

c.     The claims or defenses of the plaintiffs are typical of the claims or defenses of the Class; and,

d.     Plaintiffs and their counsel will fairly and adequately protect the interests of the Class.

<u>**Numerosity**</u>

60.     Plaintiffs believe that the total number of putative class members is well in excess of 500 individuals. The exact number of class members may be determined from defendants' payroll and personnel records.

<u>**Commonality**</u>

61.     There is a well-defined commonality of interest in the substantial questions of law and fact concerning and affecting the Class in that plaintiffs (and all members of the Class), have been harmed by defendants' failure to compensate current and former hourly-paid non-exempt Associate Logistic Consultants, Logistic Consultants, Senior Account Managers, Carrier Sales Representatives, Operations Managers and Dedicated Operations Representatives with whom plaintiffs worked, for all time worked in excess of forty (40) hours in a given workweek. The common questions of law and fact include, but are not limited to, the following:

a.     Whether defendants encouraged, directed, required, and/or permitted plaintiffs to, and/or demanded that plaintiffs, work before and after their scheduled shifts without pay;

b.     Whether defendants failed to compensate class members for all the work they encouraged, directed, required and/or permitted plaintiffs to perform;

c.      Whether defendants failed to keep true and accurate time records for all hours worked by the class members; and

d.      Whether plaintiffs suffered damages and the proper measure of those damages.

61.      Plaintiffs also anticipate that defendants may raise defenses that are common to the class.

## Adequacy

62.      Plaintiffs will fairly and adequately protect the interests of the Class, and there are no known conflicts of interest between plaintiffs and class members.  Plaintiffs have retained experienced class action litigation counsel, *i.e.*, attorney Randall B. Gold, Fox & Fox, S.C. (www.fox-law.com), attorney Daniel J. Voelker, Voelker Litigation Group (www.voelkerlitigationgroup.com), and attorney Jonathan D. Karmel, The Karmel & Torres Law Firm (www.karmellawfirm.com) that are competent in the prosecution of complex litigation, and who each have decades of experience acting as class counsel in federal court wage and hour matters, as well as handling complex federal and state court employment, commercial, and related litigation.

## Typicality

63.      Plaintiffs' claims are also typical of the class members they seek to represent as they have the same interests and have suffered from the same unlawful employment practices.

64.      Upon information and belief, there are no other class members who have an interest individually controlling the prosecution of their individual claims, especially in light of the relative value of each claim and the difficulties involved in bringing individual litigation against one's employer.

## Predominance and Superiority

65.      The common questions identified above predominate over any individual issues, which will relate solely to the quantum of relief due to individual members of the Class. A class action is superior to other available means for the fair and efficient adjudication of this controversy because

individual joinder of the parties is impracticable. Class action treatment will allow a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense if these claims were brought individually. Moreover, as the damages suffered by each class member are relatively small in the sense pertinent to class action analysis, the expenses and burden of individual litigation would make it difficult for individual class members to vindicate their claims.

66.     Furthermore, important public interests will be served by addressing the case as a class action. The cost to the court system and the public for the adjudication of individual litigation and claims would be substantial and substantially more than if claims are treated as a class action.

67.     Finally, prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications, establish incompatible standards of conduct for defendants, and/or substantially impair or impede the ability of class members to protect their interests. The issues in this action can be decided by means of common, class-wide proof and, if appropriate, the Court can fashion methods to efficiently manage this case as a class action.

## COUNT I
### (Collective Action - Violations of the FLSA)

1.     Plaintiffs adopt the preceding Paragraphs 1 – 67 above as Paragraph 1 of Count I.

2.     Defendants operate an "enterprise" as defined by Section 3(r)(1) of the FLSA, 29 U.S.C. § 203(r)(1), and are engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1)(A), 29 U.S.C. § 203(s)(1)(A).

3.     Plaintiffs and the members of the FLSA Collective Class are similarly situated employees within the meaning of the FLSA, 29 U.S.C. § 216(b).

4.      Section 207(a)(1) of the FLSA provides that an employee must be paid an overtime

rate equal to at least 1.5 times the employee's regular rate of pay for all hours

worked in excess of (forty) 40 hours per week.[1]

5.      During the relevant period, and possibly longer, defendants violated the FLSA by

routinely requesting, encouraging, demanding that and/or permitting plaintiffs and members of the

FLSA Collective Action to work overtime hours without paying them proper overtime compensation.

6.      Throughout the relevant period, and possibly longer, plaintiffs and members of the

FLSA collective Class worked in excess of forty (40) hours per week but were not paid an overtime

premium of 1.5 times their regular hourly rate for such hours.

7.      Plaintiffs and members of the FLSA collective Class are not properly classified as

exempt.

8.      Throughout the relevant period, defendants expected plaintiffs to be available to work

after completion of their assigned shift for work-related tasks as set forth herein.

9.      Defendants' alleged violations of the FLSA are willful and intentional. Defendants

failed to make a good faith effort to comply with the FLSA with respect to the compensation of

plaintiffs and members of the FLSA collective Class.

10.      Because of defendants' willful FLSA violations, a three-year statute of limitations

applies, per 29 U.S.C. § 255.

11.      As a direct and proximate result of said unlawful acts, plaintiffs and members of the

FLSA collective Class have been deprived of overtime compensation, and other wages, in amounts to

---

[1] The FLSA does not specifically define "work", but Department of Labor regulations "Principles for Determination of Hours Worked" (29 C.F.R. §§ 785.11-785.13) are instructive and provide that any work an employer "suffers or permits" to be performed at the job site (like Plaintiffs' meal break work) must be counted as hours worked when the employer "knows or has reason to believe" the work is being performed.

be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs and all other compensation pursuant to 29 U.S.C. § 216(b).

## COUNT II
### (Violations of MIWOWA, Michigan Compiled Laws, § 408.934, *et seq.*)

1.      Plaintiffs adopt Paragraph 1 of Count I as Paragraph 1 of Count II.

2.      Plaintiffs are members of a Class that meets the requirements for certification and maintenance of a class action pursuant to FRCP 23.

3.      Michigan Compiled Laws, § 408.934, *et seq.*, requires employers to pay employees minimum wages for all hours worked.  The MIWOWA requires employers to pay employees 1.5 times their regular rate of pay for all hours worked over (forty) 40 per work week. The MIWOWA provides that employers who violate its provisions are liable to affected employees for unpaid wages, costs, attorneys' fees, a civil penalty of $1,000.00 per occurrence and other appropriate relief.

4.      Defendants have engaged in an ongoing practice of violating the MIWOWA by, *inter alia*, failing to properly compensate plaintiffs for all time worked before and after their regularly scheduled first shift, thereby depriving them of the overtime wage compensation required by the MIWOWA.

5.      Plaintiffs and members of the Class are not subject to any exemption for overtime compensation.

6.      Defendants engaged in an ongoing practice of violating MIWOWA by failing to compensate plaintiffs for all time worked over forty (40) hours per week at 1.5 times their hourly rate (weekly salary divided by forty (40) hours) as set forth herein.

7.      As a result of defendants' violations of MIWOWA, plaintiffs and the Class have suffered and will continue to suffer a loss of income and other damages.

8.      Defendants are further liable to plaintiffs and other class members for actual damages, liquidated damages, a civil penalty of $1,000.00 per occurrence of an underpayment and equitable relief, as well as reasonable attorneys' fees, costs, expenses and any other available relief.

9.      Plaintiffs are also entitled to injunctive relief to prevent defendants from continuing its violation of the MIWOWA, and other appropriate class-wide injunctive relief.

## COUNT III
### (Retaliation Against Schuler in Violation of 29 U.S.C. § 215(a)(3))

1.      Schuler adopts and incorporates Paragraph 1 of Count I as Paragraph 1 of Count III.

2.      Governing law, including 29 U.S.C 215(a)(3), prohibits an employer from discharging or otherwise discriminating against any employee for complaining or expressing reasonable good faith concerns about an unfair labor practice under the FLSA, including its failure or refusal to pay overtime compensation to eligible employees.

3.      At all relevant times, including in November of 2023, Schuler notified and complained to his supervisor about the failure to compensate him, and other eligible, similarly situated salaried employees for overtime work in excess of forty (40) hours per week as required by applicable law, as alleged above.

4.      Because of Schuler's legally protected conduct, as alleged, the Company unlawfully retaliated against him, including but not limited to unfairly berating, criticizing, and then terminating him on or about February 12, 2024.

5.      As a direct and proximate result of the Company's retaliation, Schuler has lost, and will continue to lose, substantial income and employment benefits, has suffered related anxiety, humiliation, emotional distress, and has sustained other damages.

## COUNT IV
### (Violations of Privacy Act)

1.      Plaintiffs adopt and incorporate Paragraph 1 of Count I as Paragraph 1 of Count IV.

22

2.      The Company did not provide its Associate Logistics Consultants, Logistics Consultants, Carrier Sales Representatives, Operations Managers, Dedicated Operations Representatives and other non-exempt employees with a work cell phone, but instead required employees to download an app on their *personal* cell phones (purchased and paid for by the employees) so as to allow the Company to track when employees missed calls from customers - and then discipline or terminate its employees for same.

3.      At all relevant times, these calls, and any personal calls which came through the office number for the Company, regardless of the hours of the day or night, were recorded through the "Ai" feature of the app that plaintiffs, and members of the Class, were required to download on their personal cell phones, and a transcript was made of the same.

4.      Plaintiffs and members of the Class did not consent in writing or otherwise to the recording of their phone calls and the making of a transcript of same, in particular, concerning calls that they received on their personal cell phones when they were out of the office and on their personal and unpaid time.

5.      The recording of personal calls received on their personal cell phones after the first shift and the making of a transcript of the same constitutes an invasion of plaintiffs' and the Class members' privacy and violates the Privacy Act.

6.    The Privacy Act provides, *inter alia,* as follows:

**423.508 Gathering or keeping certain information prohibited; exceptions; information as part of personnel record.**

"Sec. 8. (1). An employer shall not gather or keep a record of an employee's associations, political activities, publications, or communications of nonemployment activities, except if the information is submitted in writing by or authorized to be kept or gathered, in writing, by the employee to the employer. This prohibition on records shall not apply to the activities that occur on the employer's premises or during the employee's working hours with that employer that interfere with the performance of the employee's duties or duties of other employees.

(2) A record which is kept by the employer as permitted under this section shall be part of the personnel record."

**423.511 Violation; action to compel compliance; jurisdiction; contempt; damages.**

"Sec. 11.  If an employer violates this act, an employee may commence an action in the circuit court to compel compliance with this act. The circuit court for the county in which the complainant resides, the circuit court for the county in which the complainant is employed, or the circuit court for the county in which the personnel record is maintained shall have jurisdiction to issue the order.  Failure to comply with an order of the court may be punished as contempt. In addition, the court shall award an employee prevailing in an action pursuant to this act the following damages:

(a) For a violation of this act, actual damages plus costs.

(b) For a willful and knowing violation of this act, $200.00 plus costs, reasonable attorney's fees, and actual damages."

7.     The Company's conduct, as alleged above, was willful and constitutes a violation of plaintiffs' rights, and those of the Class Members, under the Privacy Act.

8.     As a direct and proximate result thereof, plaintiffs and the members of the Class are entitled to damages and the statutory penalty of $200.00 per occurrence as set forth in the Privacy Act, as well as reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE,** plaintiffs, GARRETT SCHULER, ROBERT MAURER, MATT GROH and CAMERON BONNEY, individually and on behalf of all others similarly situated, through their attorneys, demand judgment against defendants, B & L SYSTEMS, INC., d/b/a Fifth Wheel Freight, REESE VAN HECK, and JOSH BROWLEY, jointly and severally, and in their favor, and in favor of all those otherwise similarly situated, for sums that will properly, adequately, and completely compensate them for their damages, attorneys' fees and costs of this action, as follows:

A.     Certify a collective action under Count I and duly designate plaintiffs as proper representatives of all those employees similarly situated;

B.     Order the Defendants to file with this Court and furnish to counsel a list of all names, telephone numbers, addresses, and e-mail addresses of all Associate Logistic Consultants, Logistic Consultants, Senior Account Managers, Carrier Sales

Representatives, Operations Managers and Dedicated Operations Representatives or any other similarly titled position who worked for defendants within the last three (3) years;

C.     Authorize plaintiffs' counsel to issue notice at the earliest possible time to all Associate Logistic Consultants, Logistic Consultants, Senior Account Managers, Carrier Sales Representatives, Operations Managers and Dedicated Operations Representatives or any other similarly titled position who have worked for the defendants within the last three (3) years, informing them that this action has been filed, of the nature of the action, and of their right to opt-in to this lawsuit;

D.     Certify a class for Count II;

E.     Appoint the law firms of Fox & Fox, S.C., Voelker Litigation Group, and The Karmel & Torres Law Firm as counsel for Plaintiffs and the Class under FRCP 23(g);

F.     Declare and find that the defendants committed one or more of the following acts:

- Violated provisions of the FLSA by failing to pay regular wages, overtime wages and other benefits to plaintiffs and similarly situated persons who opt-in to this action;

- Willfully violated provisions of the FLSA;

- Violated the MIWOWA by failing to pay overtime wages to plaintiffs and members of the Class;

- Wrongfully retaliated against Schuler in violation of the FLSA; and

- Violated the Privacy Act.

G.     Award compensatory damages in the amount of one and one-half times plaintiffs' and similarly situated persons' regular rate of pay for all time they worked in excess of forty (40) hours per week under the FLSA;

H.     Award interest on all overtime compensation due accruing from the date such amounts were due until it is paid under the MIWOWA as well as a statutory civil penalty of $1,000.00 per occurrence of an underpayment;

I.     Award liquidated damages in an amount equal to the amount of unpaid overtime compensation found due under the FLSA;

J.      Award plaintiff Schuler, individually, all lost income, benefits and other compensation, lost interest thereon, as well as compensatory, liquidated, punitive, and/or all other available damages resulting from the subject retaliation against him under the FLSA, as alleged in Count III;

K.      Award all costs and reasonable attorneys' fees incurred prosecuting all of the instant claims under the FLSA and/or the MIWOWA;

L.      Award plaintiffs $200.00 per violation of the Bullard-Plawecki Employee Right To Know Act 397 of 1978, Michigan Compiled Laws, 423.501, *et seq.* and reasonable attorneys' fees and costs;

M.      Grant leave to amend to add claims under applicable laws, if necessary;

N.      Grant leave to add additional plaintiffs by motion, written consent forms, or any other method approved by the Court; and

O.      For such further relief as the Court deems just and equitable.

## JURY DEMAND

Plaintiffs hereby respectfully demand a trial by jury.

**Dated this 1ˢᵗ day of March, 2024.**

*/s/Jonathan D. Karmel*
Jonathan D. Karmel, Esq. (MI Bar. No.P77483)
**THE KARMEL & TORRES LAW FIRM**
20 South Clark St.
Suite 1720
Chicago, IL 60603
312.641.2910
jon@karmellawfirm.com

Randall B. Gold, Esq. (IL Bar. No. 6190918) (*pro hac* pending)
**FOX & FOX, S.C.**
111 East Wacker Dr., Suite 2300
Chicago, Illinois 60601
312.526.3220
rgoldlaw@aol.com

Daniel J. Voelker, Esq. (IL Bar. No.6189578) (*pro hac* pending)
**Voelker Litigation Group**
33 N. Dearborn Street
Suite 1000
Chicago, Illinois 60602
312.870.5430
312.505.4841
dvoelker@voelkerlitigationgroup.com