UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GARRETT SCHULER, et al.,

    Plaintiffs,

v.

B & L SYSTEMS, LLC, et al.,

    Defendants.

_____/

Case No. 1:24-cv-219

Hon. Hala Y. Jarbou

**OPINION**

Plaintiffs Garrett Schuler, Robert Maurer, Matthew Groh, and Cameron Bonney filed claims against Defendants B & L Systems (d/b/a Fifth Wheel Freight, "FWF"), Reese Van Heck, and Josh Browley alleging violations of the Fair Labor Standards Act ("FLSA"), the Electronic Communications Privacy Act ("ECPA"), the Michigan Improved Workforce Opportunity Wage Act ("MIWOWA"), and the Bullard-Plawecki Employee Right to Know Act ("B-PERKA").

Plaintiffs filed their claims in federal court despite language in their employment contracts that establishes arbitration as the proper forum for all claims related to their employment. Before the Court is Defendants' motion to compel arbitration per the terms of the employment agreement. (ECF No. 5.) For the reasons discussed herein, Plaintiffs are not transportation workers. The arbitration clause in their respective employment agreements applies to their claims. Accordingly, the Court will grant Defendants' motion to compel arbitration and stay further proceedings in this Court until arbitration concludes.

**I. BACKGROUND**

All claims arise from when Plaintiffs were employed at FWF, a logistics and transportation company in the shipping and freight sector. Plaintiffs allege that they—along with similarly

situated individuals—routinely worked over 40 hours per week while employed at FWF. (Am. Compl. 6-7, ECF No. 3.) They further allege that they were improperly classified as "exempt" employees not entitled to overtime pay. (*Id.*) They claim FWF violated the FLSA and MIWOWA by failing to properly compensate employees for working over 40 hours per week. (*Id.* at 16.) Additionally, Plaintiffs allege FWF forced employees to download a mobile application onto their personal phones that allowed supervisors to track their location without consent. (*Id.* at 23-25.) They claim surveillance in violation of the ECPA and B-PERKA. (*Id.*) Schuler also filed an individual claim for retaliation under the FLSA, alleging FWF terminated him for lodging complaints pertaining to unfair compensation. (*Id.* at 22.)

As a condition of employment with FWF, Plaintiffs signed an Employment and Non-Competition Agreement. (ECF No. 6-1, PageID.88, 98, 108, 118.) For each plaintiff, their employment contract contained a clause in which the "[e]mployee waives the right to file Claims in court," and "agrees that any Claims of any kind shall be decided exclusively by final and binding arbitration before the American Arbitration Association ("AAA")." (*Id.*, PageID. 85-86, 95, 105, 115.) Plaintiffs do not contend that the arbitration clause is invalid or that it would not typically apply to claims under the FLSA, ECPA, MIWOWA, and B-PERKA. Rather, Plaintiffs argue (Pls.' Br. 4, ECF No. 10) that they are transportation workers exempt from arbitration due to the Federal Arbitration Act ("FAA")'s exception for "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. Defendants seek to move Plaintiffs' claims to arbitration per the employment agreement's terms.

## II. STANDARD

Under the FAA,

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a

2

>civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4.  The FAA applies to broadly worded clauses that direct "any" claim arising from employment disputes to arbitration.  *Cir. City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001).

Embedded in the FAA is an exception for "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. Generally referred to as an exemption for transportation workers, *Circuit City Stores*, 532 U.S. at 119, this "'class of workers' is properly defined based on what a worker does for an employer, 'not what the employer does generally.'" *Bissonnette v. LePage Bakeries Park St.*, 601 U.S. 246, 251 (2024) (quoting *Sw. Airlines Co. v. Saxon*, 596 U.S. 450, 456 (2022)).  Courts should interpret the § 1 language so as not to include "all employees of major transportation providers." *Saxon*, 596 U.S. at 460-61 (explaining how the phrase "class of workers" is limited to a subset of transportation workers because the "narrow definition of seamen" covers "a subset of workers engaged in the maritime shipping industry").  An employee does not qualify as a transportation worker for § 1 purposes if they provide a service that is removed from the actual transportation of goods, even if the services are provided to a company that transports goods in interstate commerce. *See id.* at 462-63 (discussing why janitorial services are not activities within the flow of interstate commerce).

The Supreme Court has yet to "provide a complete definition of 'transportation worker,'" but for the § 1 exemption to apply, the "worker must at least play a direct and 'necessary role in the free flow of goods' across borders.'" *Id.* at 458 (quoting *Cir. City Stores*, 532 U.S. at 121). The worker must "be actively 'engaged in transportation' of those goods across borders via the channels of foreign or interstate commerce." *Id.* (quoting *Cir. City Stores*, 532 U.S. at 121).  The

3

Court must ask whether the worker "actually engaged in the movement of goods in interstate commerce in the same way seamen and railroad workers" do. *Asplundh Tree Expert Co. v. Bates*, 71 F.3d 592, 601 (6th Cir. 1995).[1] The Supreme Court determined "seamen" "includes only those who work on board a vessel," but for § 1 purposes, "transportation worker" includes those who physically load and unload the vessel that carries goods across borders even if they are not on the vessel itself. *Saxon*, 596 U.S. at 461-62 (noting that physically moving the goods on and off the vessel constitutes transporting goods and is a shared characteristic to the work seamen and railroad workers perform).

If the Court determines arbitration is the proper forum for claims, the Court "shall on application of one of the parties stay the trial of the action until arbitration" is complete. 9 U.S.C. § 3.

### III. ANALYSIS

**A. Whether Plaintiffs Qualify as Transportation Workers Under § 1 of the FAA**

The Court must determine whether Plaintiffs actively engaged in transportation of goods across borders via the channels of foreign or interstate commerce. *Saxon*, 596 U.S. at 458. As explained above, according to the Sixth Circuit, the worker must have "actually engaged in the movement of goods in interstate commerce in the same way seamen and railroad workers" do. *Asplundh Tree*, 71 F.3d at 601. Here, Plaintiffs are not transportation workers for purposes of § 1 of the FAA.[2]

---

[1] The Sixth Circuit's *Asplundh* opinion remains good law, as it applies the same logic as the more recent Supreme Court decisions interpreting the § 1 exemption. *See, e.g.*, *Saxon*, 596 U.S. at 457-58 (explaining that "the phrase 'class of workers engaged in . . . commerce' should be 'controlled and defined by reference' to the specific classes of 'seamen' and 'railroad employees,'" interpreting the general term "in light of any 'common attribute[s]' shared by the specific items"). The Court considers the "actually engaged in the movement of goods" language from *Asplundh* as controlling law that is consistent with the "actively engaged in transportation of those goods" language in *Saxon*.

[2] Because Plaintiffs are not transportation workers under § 1, the Court need not address arguments as to whether the FAA preempts Michigan's Uniform Arbitration Act, which also requires arbitration.

4

### 1. Garrett Schuler

Schuler worked as an Associate Logistic Consultant, a Logistic Consultant, and also a Sales Consultant for FWF. (Am. Compl. 3.) He made cold calls to potential clients in an effort to generate new business for FWF. (*Id.* at 11.) Schuler did not personally transport or move goods; he facilitated third-party contracts for those who supplied and transported goods. (*Id.* at 11-12; Schuler Decl. 2, ECF No. 10-1.) Schuler did not have authority to direct or manage those who transported goods. (Am. Compl. 12.) His customers and potential clients physically transported goods. (*Id.*; Schuler Decl. 2.)

While Schuler may work for a transportation company, the Supreme Court established that courts analyze what the employee does, not what the employer does. Schuler did not personally transport, move, or interact with goods. He may have facilitated the transportation of goods and created connections allowing others to move goods in interstate commerce, but the services he provided—sales—are too far removed from actually moving goods for him to qualify as a transportation worker. He served as a third-party allowing others to actively engage in the transportation of goods with no authority over those who did. He is therefore not a transportation worker, and the arbitration clause in his employment contract covers his claims.

### 2. Robert Maurer

Maurer worked as a Logistic Consultant and Senior Logistic Consultant for FWF. (Am. Compl. 3-4.) He made cold calls to potential clients in a sales capacity. (*Id.* at 11-12.) In what the complaint describes as "after-hours operations" responsibilities, Maurer would "check[] on loads and truck driver issues." (*Id.* at 4.) While there are no further details outlining these "after-hours operations," Maurer did not personally transport or move goods and did not have authority to direct or manage those who transported goods. (*Id.*; Maurer Decl. 2, ECF No. 10-2.)

5

As indicated above, sales work is too far removed from the movement of goods for a worker to qualify for the § 1 exemption. While checking on issues pertaining to loads and drivers is more engaged in the transportation process than sales, it is not enough to fall under the § 1 exemption. The Supreme Court determined that the term "transportation worker" applies to those whose work has shared attributes to seamen and railroad workers. *Saxon*, 596 U.S. at 457-58. In doing so, the Supreme Court established that seamen were those who were on board the vessels interacting with the goods, not those who managed the vessels from afar. *Saxon*, 596 U.S. at 461-62. Those who load and unload goods from planes shared the important characteristic of personally moving the goods. *Id.* While a supervisor may be included in this category, the analysis turns on their active participation in moving the goods. *Id.* at 454, 457-58. Maurer does no such moving. Any oversight he conducts is from afar. Maurer does not have any authority over the drivers who physically move the goods, nor does he personally interact with the goods. Therefore, his responsibilities do not share necessary attributes with seamen and railroad workers. He is not actively engaged in the transportation of goods for purposes of § 1. His claims must proceed to arbitration.

**3. Matthew Groh**

Groh worked as a Freight Broker for FWF. (Am. Compl. 4.) In this capacity, he located carriers to transport goods for FWF freight customers, facilitating commerce between other parties. (Pls.'s Br. 5-6.) Groh did not personally transport or move goods and did not have authority to direct or manage those who transported goods. (Am. Compl. 11-12; Groh Decl. 2, ECF No. 10-3.)

Much like Schuler and Maurer, Groh provided services to companies that transported goods, but those services are too far removed from actually transporting or moving the goods for him to qualify as a transportation worker under § 1. Facilitating other companies' shipping transactions does not constitute actively engaging in the transportation of goods. Groh did not

actually engage in the movement of any goods in the way a seamen or railroad worker would. The arbitration clause covers his claims.

### 4. Cameron Bonney

Bonney worked as a Carrier Procurement Representative and Dedicated Operations Representative for FWF. (Am. Compl. 4.) Per his responsibilities, Bonney located and procured carriers for customers that needed transportation services. (Pls.' Br. 6.) He was responsible for coordinating logistics, but did not personally transport or move goods and did not have authority to direct or manage those who transported goods. (Am. Compl. 11-12; Bonney Decl. 2, ECF No. 10-4.)

Similar to Groh, Bonney's involvement in the transportation process was limited to facilitation. Bringing parties together to ensure smooth logistics, before the actual shipment began, is managing the transportation of goods from afar. His services resemble those of the workers the Supreme Court excluded from the definition of "seamen," too far removed from the actual moving of goods. *See Saxon*, 596 U.S. at 461-62. He did not actively engage in the transportation of goods or actually engage in moving goods. His claims are not exempt under § 1 and must proceed through arbitration.

### B. Staying Claims Compelled to Arbitration

Defendants argue that the Court has discretion to dismiss this matter after compelling the claims to arbitration. This argument conflicts with clear instructions from the Supreme Court. "When a federal court finds that a dispute is subject to arbitration, and a party has requested a stay of the court proceeding pending arbitration, the court does not have discretion to dismiss the suit on the basis that all the claims are subject to arbitration." *Smith v. Spizzirri*, 601 U.S. 472, 475-76 (2024).

7

Here, Plaintiffs request that the Court stay the proceedings pending arbitration. (Pls.' Br. 8-9.) With no other reason to dismiss the claims, the Court must stay the proceedings until arbitration is complete.

## IV. CONCLUSION

Plaintiffs do not actually move goods in interstate commerce. They facilitate the transportation of goods as third-party sales and logistics representatives, but these services do not satisfy the requirements of the transportation worker exception under § 1 of the FAA. Because each plaintiff signed an employment contract agreeing to bring claims through an established arbitration process, their claims must proceed as such. The Court will grant Defendants' motion to compel arbitration and stay the proceedings until arbitration has concluded.

The Court will enter an order consistent with this Opinion.

Dated: September 4, 2024               /s/ Hala Y. Jarbou
                                       HALA Y. JARBOU
                                       CHIEF UNITED STATES DISTRICT JUDGE